Good morning, panel. May it please the Court, my name is Will DeBoer of DeBoer Acton & Stafford, and I'm here on behalf of the appellants, plaintiffs, in this case, Margaret and Jonathan Russell Folmar. The Folmars were buyers of real property in Ocean Isle Beach, and really the main issue today before this Court is whether or not the issues that were litigated in the state action collaterally stop my clients from litigating issues against the buyer's agent in this federal case. And upon review of the cases both cited by myself, opposing counsel, and in the judgment and order of the Honorable Judge DeBoer, District Court Judge, there is one common theme that I think everybody agrees on early on, and that is that this is the state law of collateral estoppel, and that there are three elements involved in collateral estoppel. It's that the identical issues needed to be litigated in the prior action. The second is the prior action resulted in the final judgment on the merits. And the third is in relation to the parties in privity with the prior action. Now, Judge Motz, I realize that actually one of the cases that was cited by Judge DeBoer is a case that you wrote the opinion on back in 2008. It's Sarton v. Maseek, I think that's how you pronounce it maybe. But I think that case is a great starting point for what this whole argument's about, and that is the first element of collateral estoppel is were the issues actually litigated. And the way I want to start off that argument, in your holding in that case, you cite a North Carolina Supreme Court decision about when you're looking at identical issues, there are really four elements that the North Carolina Supreme Court has laid out for looking at whether the issues are identical. First, the issues must be the same as those involved in the prior action. Second, the issues must have been raised and actually litigated. Third, the issues must have been material and relevant to the disposition of the prior action. And then fourth, the determination of the issues in the prior action must have been necessary and essential in the resulting judgment. And when you're looking at this case, in my view, there are three major events that happen in this case. The first event is the disclosure statement by the sellers, and that was on February 14, 2012. The sellers of this real property signed a disclosure statement on that date saying they didn't know of any defects with the property. The second big event is February 23, 2012, when my clients, nine days later, had an inspection done, and the inspection report revealed some issues with wood rot and some minor defects around the house. The third event occurred after the inspection report, as stated several times in my brief, and that event was Ms. Harris, the defendant, an appellee in this case, and Cook Realty coming to the property prior to closing. Mr. Moffitt pressing his hand on a piece of wall cladding, that wall cladding falling off in front of Ms. Harris, revealing exposed rotten wood, Ms. Harris attempting to put the wall cladding back on the wall, and then Mr. Moffitt, as alleged in the lawsuit, telling Mr. Moffitt that it was already listed in the inspection report. That third event was never litigated. It was never litigated, the ruling upon reading Fulmar v. Kassai, and it's entirely, the ruling that the judge in that case decided was only on events one and two, and the judge said that the disclosure statement, that my clients could not rely on the disclosure statement because they conducted an inspection. There was no discussion of the buyer agent duty to the buyer, the fiduciary role that the buyer agent has for the buyer, the discovery of this new defect, how this new defect affects my client's decision to ultimately purchase the property. None of that was discussed in the prior order. Can I ask you just a question? I do understand your claim about how the fiduciary, argument about how the fiduciary duty claim was not litigated, but I don't understand on the fraud point, I mean it does seem that what was litigated was whether the Fulmars were on notice as to whether there was wood rot in the house, and it was determined that they were through the inspection report, so that issue would be dispositive in a fraud action against the agent as well. So why isn't on the fraud action, I'm just not understanding why it matters whether it happened before the report or after the report, either way the report provides the notice, which then makes reliance on any misrepresentation unreasonable. Judge Harris, that's an excellent question, and I think that goes to the heart of what I believe the appellees will argue. And the answer to that is that the duties, this goes back, when you're talking about reasonable reliance, and you're talking about reasonable reliance with the plaintiffs versus the defendants, reasonable reliance as to the buyer versus seller is different than the reasonable reliance from a buyer to a buyer's agent. So whereas the buyer and seller, the seller basically has this disclosure statement, but no further duties, they don't, you know, unless they're basically making the buyer forego an additional investigation, they're done. A buyer's agent has a duty to protect the buyer. Doesn't that come in under the fiduciary duty claim rather than the plain old fraud claim? Well, as to the fraud claim, Your Honor, my argument to this court is that the material defect that was discovered by Harris couldn't have been identified on the inspection report, which was litigated previously, and therefore the judges… says there's rotted wood, indeed, right around the front door, and then the agent discovers, allegedly, oh, look, there's rotted wood around the front door. How hasn't it been disclosed already? My argument today, Your Honor, would be that kind of similar to a car engine, if there's a leaking gasket, then the gasket's defect doesn't necessarily mean the entire engine's defected. And so in this case, the inspection report identified some issues with the home, and the court of appeals said those issues that were identified put the plaintiffs on notice of some defects with the property. However, all of that, they did not put them on notice of the major material defect that fell off in front of the agent. And to me, Your Honor, that is different, and that is a different claim and a different argument. So it's basically, okay, so your argument is that the inspection report, although it said there was wood rot, although it said there may be invisible signs of that as well, you really should get an expert in here to check it all out, it still didn't really put them on notice that this particular instance of wood rot. This particular event, correct, Your Honor. And I'd like to further that by saying, just from a practical matter, most prudent homebuyers get an inspection report, and most inspection reports always contain some language of defects and issues that need to be repaired and minor touch-up work. The difference here is this case is solely against a buyer's agent who came to the property and from a practical matter witnessed a huge piece of wall fall off and tried to fit it back onto the house. And that type of defect was not in the inspection report, was not identified previously, and that's what I'm arguing in this case in its entirety, was that one event is where Ms. Harris breached her fiduciary duty, it's where she breached her agency agreement. She committed fraud by failing to disclose this material defect to my clients. And I cited John v. Robbins, I cited several cases, but I think John v. Robbins is important because it says that a broker may not evade their duty to communicate directly to the principal simply by demonstrating other material information was available. That's important because in this case there was other material information available that still does not relieve the broker or prevent the broker. The broker needs to inform its client and the person it has its duty to of all material defects regardless of what's already known. And that's where we say the damages are linked. Williams v. Peabody, you know, I think is a good discussion also of this identical issue question and it says that a very close examination of the matters actually litigated must be made in order to determine if the underlying issues are identical. If they are not, the doctrine of collateral estoppel does not apply. The inspection report in this record, is it in this record? It is not, Your Honor. It is not. So they don't know what it said? The court, we don't, it wasn't attached to any pleading. The district court didn't know what it said either? Correct, Your Honor. And the district court, it's not before this court, but you know, it was a very large inspection report that had a lot of good comments in it, good condition comments everywhere. How are y'all drawing on what it had in it? It's not in here. I mean, everybody's talking about what's in the inspection report. Well, it's not in the inspection report, but the inspection report's not in the record. Where are you getting what you say was in it and not in it? I'm getting it from strictly what's in the record for this court are the excerpts from the inspection report that the North Carolina Court of Appeals focused on. So which is? Fulmar v. Casaya case. From the other case? From the other case. Excerpts from the other case. Excerpts from the other case. And I'm relying on the affidavit that's attached to my pleading that's filed in this case from the contractor discussing what happened with Moffitt that day on the property. And the fact, and really, Your Honor, the point... But your point is that Mrs. Harris was lying when she said it's already in the inspection report. Correct. And nobody's seen the inspection report. It's not in this record. That's correct, Your Honor. How do we know whether she's telling the truth or not? Well, Your Honor, my point to that was we know from the pleadings, if you take my allegations as true, we know that she was out there on the property. So this comes up here on 12b-6? Yes, Your Honor. Does it? Is that what this is? The judge dismissed it on the rule of collateral estoppel. But he cites 12b-6 in the second line of the order. Correct, Your Honor. So if you haven't alleged a fraud claim, even though if it's not collaterally estopped, you lose the fraud claim, right? I did allege the fraud claim. I understand that. But if we find that the facts that you've alleged don't come up to a fraud claim, then you have it. You think you have. I recognize that. That's correct. That's correct, Your Honor. That's correct. Was it litigated below whether or not she made a fraud claim? Whether or not she made a sufficient fraud claim? In the prior action? In the state action? Well, it was litigated before Judge Dever? No, nothing has been litigated in front of Judge Dever. Well, you must have litigated collateral estoppel before Judge Dever. He overruled you. Look, Judge Dever ruled that collateral estoppel from the state case ended this case before it even got started. He granted a 12b-6 motion. Correct. But did the other case have a fiduciary breach in it? As to the seller, the other case only had all of the allegations of the other case had to do with the seller. That was it. It was the seller's representations to the buyer. Right. And in this case, the facts were totally different. And this has to do with the buyer's agent and the fact that the buyer's agent did not form the buyer of the material defect. But the buyer's agent was the seller's agent. The buyer's agent was the seller's agent. But all of the allegations contained in this federal case have to do with the seller. Is that a common way to do things in real estate transactions in North Carolina? The real estate brokers represent both sides? The dual agency is, I disagree with it because attorneys can't do it, obviously. But dual agency is common. Is this the way it's always done? It's done in a lot of real estate transactions, especially, my understanding is, those done by the beach. Well, maybe she had a fiduciary duty to disclose to one side but not to the other. She said, we all waived it all by agreeing that she could be a double agent. I understand the conundrum there. And I would just say that Spence v. Spalding talks about the dual agency. Actually, it's Brown v. Roth is a great case which discusses a buyer's agent and the breach of fiduciary duty of a buyer's agent. And that agent was Lake Properties. They were acting as a dual agent. And that case said that an agent has a duty to disclose all facts that he knows or should know would reasonably affect the judgment of the principal. In this case, a piece of wall cladding falling off in front of the agent would reasonably affect... But that conflicts with his duty to the other side. Your Honor, I totally agree. I mean, I totally... But you agreed, but your client agreed to it up front. Which is a common occurrence that they represent. They still have that duty to the buyer. They still have that duty. Lawyers can't do it, but real estate agents can do it. That's the best I can say. You would say we don't have to decide that, right? You just want a chance to make the case that goes to court and let someone else figure out whether a fiduciary duty was really breached here or not. That's correct. The only point you're making is it's not collateral. That's correct, Your Honor. Thank you. Thank you. Good morning. Good morning. I'm Clay Collier from Wilmington, North Carolina. I'm here for Sarah Harris and Stuart Cook and his realty agency. And I've come up here on their behalf to encourage you to agree that the district court was correct in their interpretation of the law as it applies to this case and the ruling which dismissed the case based on collateral estoppel. Well, how would the breach of fiduciary duty claim be collaterally estopped when there was no fiduciary duty between buyer and seller, but there is a fiduciary duty between the agent and one of the parties or both? And Judge Motz, because the fundamental issue that was resolved in the Kazai litigation was the reasonable reliance. Some courts call it justifiable reliance. And in order to breach a fiduciary duty, then the plaintiff in this case has to have reasonably or justifiably relied upon whatever duty was breached. The person who owes the duty, your client, has an affirmative duty, an affirmative burden to disclose information. Now, maybe it wasn't breached here, but it's something like apples and oranges with respect to the breach of fiduciary duty. Kind of odd, isn't it? In North Carolina, by statute, real estate professionals are allowed to be dual agents. I understand that. And in fact, when you look at the complaint, Exhibit B to the complaint, it's referenced in paragraph 50 of the complaint itself, is what's called the Working with Real Estate Agents Disclosure Form or the WWREA. And when you review that, then you will see at page two, there's a section that applies to buyers, which would have been the Fulmars in this case. And they reviewed that with Sarah. And it goes through and talks about how you can be a buyer's agent, you can be a dual agent, you can be a seller's sub-agent, all these different types of agency relationships that the law in North Carolina allows for real estate professionals. And it says, as a dual agent, it may be difficult for a dual agent to advance the interests of both the buyers and the sellers. It advises that they're supposed to try to treat buyers and sellers equally, but that sellers can prohibit dual agents from divulging certain confidential information. It advises, in this case, the Fulmars. Is that what happened here? Not in the record. Right, so that's where you maybe need to have a trial or something. Well, but see, the reason that you don't have a trial is because the question of was it reasonable for them to rely on anything that was told to them by anybody has already been decided. And it was not reasonable. No, it hasn't. Just explain to me why I'm seeing this wrong. It looked to me like what was decided was whether they were entitled to rely on a representation by someone who didn't owe them. From the case itself, the exact facts that are pled in this case are recited in the Casaya decision. Prior to closing, Harris went to the property with Derek Moffitt, a contractor hired by the plaintiffs. Moffitt went to determine the, quote, scope of work involved. That while they were there, Moffitt pressed his hand against a wall. A piece of wall cladding fell off, exposing the rotted OSB sheathing. The plaintiff alleged that other defects were also discovered by Moffitt in direct view of Harris. Plaintiffs alleged that despite the fiduciary and contractual obligations of Harris to the plaintiffs, Harris never informed the plaintiffs of the defects found at the property. Relying on the representations made by Harris, Cook, Realty, and the Casaya defendants, the plaintiffs paid the money and they filed a lawsuit. So all of these facts are included in the court of appeals decision. The facts are included. I guess what I'm getting at is the scope of the actual ruling of the court below, not what's in the facts section. Yes, ma'am. And when I read the ruling or the holding of that decision, it said they weren't entitled to rely on a representation of someone with whom they were not in a fiduciary relationship because in that context, your reliance has to be reasonable. But then I'm looking at these other cases, and here's my question for you. Are we differing on sort of state law? My understanding of state law is that even if the Falmars were already on notice, the whole house might fall down. Their realtor, because of this fiduciary duty, still has an obligation to disclose any material fact, whether or not they already know about it. She might be perfectly aware that they already know she still has to disclose it. Am I misunderstanding state law? I don't know that you're misunderstanding state law. If I'm right about state law, then this whole question of reasonable reliance and notice just has no bearing on this separate fiduciary. Well, the material, the idea, that's the other thing that I think is that we disagree on between me and Will. This whole concept that this other event where she comes to the house with the contractor employed by the plaintiffs themselves, who is their agent, who is there, and he's the person that's qualified to know if a cedar shake falls off the side of the house and there's some rotten OSB behind it, that's not a realtor that makes a professional determination of whether that's a material defect. That's a contractor, and he's standing right there. Why would she have to say anything to anybody? Because she's got a fiduciary duty. Their contractor is right there. He knows more about it than she does. That's why she would have to say something. She had a fiduciary duty. Well, and you see in the Moffitt affidavit that what she says is, oh, that's already covered in the report. She said it's in the home inspection report, which we don't know what the home inspection report said. Well, we know from the Court of Appeals decision that the home inspection report says that there's rot and missing siding above the front door. Now, this happens to the right of the front door. So you can look up and see the exact same condition that apparently happened according to Mr. Moffitt's affidavit right there in front of him. So I figure there's one of two ways on that. Either she looks at it and says, okay, well, that's the same thing as above the door, so it's already in the report. Or let's assume for the sake of argument that she just made it up. How would anybody reasonably stand in there as a contractor? How could, if she says, oh, it's already in the report, how could it already be in the report? It just fell off. The report was two weeks ago. So, you know, one way or the other, it's just not, it's not as big a deal as what they want to make it. What we would say is that it was covered in the home inspection report. That the home inspection report said there is siding missing from the house and there is rot in the sheathing or the OSB. Which seems like an excellent argument to make, you know, when this goes down for a trial. But I don't understand how it bears on the collateral estoppel point. Well, because in North Carolina, and, you know, the McFadden case is a great case that's quoted a lot or cited a lot in the Kazaa decision. In North Carolina, when, you know, we went back to the old days of caveat emptor with Helms v. Holland, Klaus v. Gordon, the old Plenty of Water case. Then we go to the era of the disclosures and residential transactions. And you start having these duties to disclose and those sorts of things. And then you see the cases come with the home inspectors. And McFadden is a great example of that. Where the court comes in and says, oh, now, wait a minute. When you get a professional to come in and inspect your home. And when that professional comes in and says, I see these things here that are things that need to be investigated further or are potential problems. If you do not go forward with that investigation, then it's on you. Now, there is a different thing there. And this is called what some folks call the artifice intended to deceive. If, for example, that shingle had fallen off. And Daryl Moffitt says, you know what? I think we need to look into that. I think I need to determine the scope of work. And if Sarah had said, no, no, no. Don't do that. Don't look at that. Go on in the house. If she had said, I'm not allowing you to come back over here and do any further inspections. Anything like that. The Tommy John case is kind of like that. They walk through the house for 20 minutes to 30 minutes or something like that. And then the realtor comes up with the square footage. And they didn't get a home inspection. But the court said square footage is one of those nebulous areas. And, you know, you might have got thrown a curveball there. And so they let that one go forward. But when you get a home inspection and when a professional comes in and evaluates the property and says, here's something you need to investigate. Unless you are barred from that further investigation or somehow prohibited or misled or misguided some way through the artifice intended to deceive, then it's on you. And you cannot reasonably rely on any representation. And it does not matter whether it's a fiduciary or somebody selling you the house. The reliance is the same element for the plaintiff no matter what. And if they don't reasonably rely, if there's no justification in their reliance on anything, then they cannot proceed. It's a necessary element for all of these claims. Now, for the latter two claims, they call it proximate cause. But enveloped in the proximate cause part of the fiduciary duty is reliance. And it has to be reasonable. The McFadden case, you know, is interesting because that was a roof case. And that lady actually claimed that they gave her a letter that was a forgery from some previous roofing contractor. It's a fraud case. Ma'am? It's a fraud case. Yes, ma'am. It's not a fiduciary duty is the thing that we're having a problem with. Okay. The Court of Appeals opinion from North Carolina finds that the plaintiffs were not denied the opportunity to investigate. They were not induced to forego additional investigations. And any reliance on any disclosure would have been unreasonable in light of the independent home inspection report. That applies to fiduciary duties as well. Okay. What case is it that you think says that? Ma'am? What case prior to this? Fulmar v. Kasaya. Sorry? Fulmar v. Kasaya. The Court of Appeals opinion in the Fulmar, in the Kasaya case. It says it doesn't make any difference if you have a fiduciary duty. I would respectfully submit to you. I just want to understand what you're saying. The Fulmar says, Fulmar lays out the exact same facts as this case. Fulmar says that they had a complete and unobstructed access to the property. They were not induced to forego additional investigation. And that any reliance on the disclosure would have been unreasonable. That sounds like, what posture was that case in? Fulmar, I say Fulmar, this is Fulmar, Kasaya, was a summary judgment case. Kasaya, they filed that lawsuit in Union County, which is I think where the Kasayas lived. And so my friend Cameron Cottle actually represented Sarah Stewart up there because that was a little too far away from me. And the Kasayas got summary judgment before Cameron filed anything. And then the court transferred the case to Brunswick County and the plaintiffs took a dismissal without prejudice against the realtors. And they went on to the Court of Appeals with the sellers. And the Court of Appeals then, in this decision, you'll see that all of the facts that are alleged in this action are also recited in the Court of Appeals decision in Kasaya. And I would submit to you that this would have been the opportunity for the Court of Appeals to have said, OK, we're going to let the Kasayas go, but now this doesn't apply to the realtors. They could have said, it does apply to the realtors, and they did. But when they say any reliance on the disclosure would have been unreasonable in light of the independent home aspect, that's any reliance. And reliance is a necessary element even in the fiduciary duty. It doesn't have to be reasonable in the same way. The rule is that per se you get to rely on the agent who owes you a fiduciary duty. The fact that you're on notice doesn't render that reliance unreasonable. Well, when the Court of Appeals says any reliance would have been unreasonable, I don't know how else to read that. I would read it as the Court of Appeals talking about the case in front of it, which is whether they could have relied in any circumstances on a misrepresentation by the sellers of the house. The case in front of it, though, again, says relying on the representations made by Harris and Cook. That's not part of the holding. When we write decisions, the fact section is not part of our holding. And we're talking about the holding of the case. I thought the plaintiffs in that case voluntarily dismissed their claims against Harris and Cook Realty without prejudice. After summary judgment was granted to the Casillas, the plaintiffs voluntarily dismissed the claims against Harris and Cook so they could appeal the summary judgment ruling. Or they voluntarily dismissed the claims against Harris and Cook, and they thereafter appealed the summary judgment against Casillas. So we didn't get the opportunity to go up to sort of put both together, ultimately. Just a quick question. Yes, ma'am. Just assuming sort of hypothetically, if we thought that the FOMARs were not collaterally estopped as to the breach of the fiduciary duty claim, would it follow that they're also not estopped on the unfair deceptive trade practices claim or the claim for punitive damages? Do those three sort of travel together? Or is there some independent argument that you haven't made yet? No, ma'am. Ultimately, the trade practices and the punitive damages, we would submit, you don't get the trade practices unless you've got an underlying fraud claim or a fiduciary duty claim. But if you do, then you also get the unfair. If you do, then you can state a claim anyway. I'll give you that. Without it, it fails. But on those claims, they don't call it reasonable reliance. They call it proximate cause. But incorporated within the proximate cause element is that you have to have relied upon whatever the advice was or whatever the duty was that was allegedly breached. I believe that the claims that they claimed, the fiduciary duty claim, against the Kazais in the first case also. But I may be wrong on that. I can't. That wouldn't make any difference. It's all running in my mind. The Kazais weren't real estate agents, right? Let's see. You're saying they alleged against the Kazais a breach of fiduciary duty? You said the seller had a fiduciary duty to the buyer? No, sir. The By holding in the Kazai case that there was no reasonable reliance, what I'm saying there is that that knocks out the fiduciary duty claim because that holding is fatal. That's an element that's required to plead to make the fiduciary duty claim against the real estate agents. Again, you kind of get into what was the duty. And the Working with Real Estate Agents form, which is Exhibit B to the complaint, lays out the duties. And you'll note in the complaint also that at paragraph 25 of the complaint, they allege correctly that the Cook agency had listed this home previously. It was their sign out in front of the yard when the Kazais came, and then they come to look. So they know that Cook is representing the sellers before they agree to let them represent the buyers also, which is the way they do it in North Carolina. I don't know what else to say about that. But I would argue to you that ultimately, when you look at the property, and then you go get a professional home inspector to look at it for you, you look at it as a layperson like Tommy John and his wife did in that house in Chapel Hill when they were moving up there, and you walk through it with your real estate agent. But then when you get a home inspector to come in as a professional and they look at it and they say, okay, here's the things that you might not have seen that you need to look at and investigate further. At that point in time, if you don't investigate it further, then you cannot come back and make claims against anybody, whether they're professional or not. In this case, the evidence is that they did investigate it further because this Darryl Moffett guy, and his affidavit is Exhibit A to the complaint, and it's also alleged in the complaint, he's a contractor. So he goes out to look at the house for them. And there's Sarah opening the door for him and giving him access, doing what an agent ought to do. So under these facts, and they're recited in very detail in the State Court of Appeals opinion, I would submit to you that the holding is consistent with North Carolina law, that there cannot be reasonable reliance, there cannot be justifiable reliance, there cannot be proximate cause, which is a necessary element for all of these claims that are made against my clients. And in fact, that issue, that necessary element, is the candle that was blown out in the previous litigation. My time's up. I'm almost here, I see. And I'd be happy to answer any questions you might have. Thank you very much. Thank you very much. If I may, just a real brief rebuttal. Page 25 of the Joint Appendix specifically shows that I did not make any allegations. There was no prior litigation of fiduciary duty, I synthesize, because there was no fiduciary duty. The fiduciary role was with the buyer's agent, which is the defendant of the matter before the court. That has not been litigated. The discovery of the new defect by Harris was not in the opinion of the state's court of appeals. That has not been litigated. Excuse me, are you referring to JA-25? What do you say is on JA-25? Yes, Joint Appendix 25. Right. When it says, plaintiff home buyers appeal from a summary judgment in favor of defendant homeowners for their claims of fraud and misrepresentation, breach of contract, and punitive damages. This had to do with the CASIA defendants only. And there's no claim in there for a breach of, or for a claim of fiduciary duty as it relates to the CASIAs, which is all I was stating. Dealing with fraud and misrepresentation. Correct. Right. And that brings me to, Your Honors, I'd like to point the cases that I've cited. He says the elements are the same, basically. And, Your Honor, I would strongly say they are not. And I would say that's based on Brown v. Roth. Brown v. Roth also discussing Marshall v. Kaveny, which had to do, Kaveny. Brown v. Roth, which had to do with the dual agent. Also, Spence v. Spaulding. All these cases talk about what a broker's duty is. You can't have reasonable reliance. He's trying to equate reasonable reliance between a buyer and a seller, and reasonable reliance on the buyers to what they expect out of their buyer's agent. The seller is selling property, caveat emptor. You're not relying on, you're trying to rely on your inspection report and other things, but you're not really, you don't have, the seller doesn't have fiduciary duty to you. In the fraud and misrepresentation claims, it's the same. The seller has different duties to the buyer. A buyer's agent has duties to protect the buyer. A buyer's agent has a legal responsibility to secure the principal, the best bargain. When that piece of wall cladding fell off, she saw it, she didn't disclose a material defect, which she had a responsibility to do. Then she went to closing and got a double commission off the property. That is what we're alleging is at issue here, is that the acts of this agent, the misrepresentations by this agent were crucial. Real quickly, Brown v. Roth is great because it has to do with a dual agent, but it also discusses Marshall v. Keveny, which Marshall v. Keveny was a buyer versus a seller. It says in the final page of that whole, it says, furthermore, the claim in this case, in that case, meaning Marshall, was against the seller, not against the purchaser's agent, who was employed for the sole purpose of assisting the purchaser in purchasing a home and owed a fiduciary duty of reasonable care and confidence to the purchaser. That has never been litigated, and that's why this lawsuit should not have been dismissed pursuant to collateral estoppel. Thank you very much.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris